THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| Respondent, | : | |
| v. | : | 3:12-CR-170 |
| | : | (JUDGE MARIANI) |
| ANGEL DILONE, | : | |
| Petitioner. | : | |

FILED
SCRANTON

NOV 15 2017

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION

On May 20, 2013, Petitioner Dilone pleaded guilty before this Court to possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). On August 22, 2013, this Court sentenced him to 63 months of imprisonment, the bottom of the applicable Sentencing Guidelines Range according to the Presentence Investigation Report. Dilone now brings a motion under 28 U.S.C. § 2255 to collaterally attack his sentence, claiming that he only pleaded guilty to Count III of the original indictment, which charged him with the possession with intent to distribute 67.3 grams of cocaine, and that the plea agreement was improperly changed to state that he intended to distribute 500 grams of cocaine, resulting in an erroneous increase in the calculation of his Sentencing Guidelines Range. Doc. 132. For reasons stated in this opinion, the Court will deny the motion.

1

## II. Factual Allegations

On July 31, 2012, Dilone was indicted on three counts of violations relating to intent to distribute cocaine, under 21 U.S.C §§ 846, 841(a)(1), and 841(b)(1)(B), as well as 18 U.S.C. § 2 and *Pinkerton* liability. Doc. 16. While Count I stated that Dilone possessed "with intent to distribute more than 500 grams of cocaine," Count II and III did not specify any quantity of the cocaine involved, though Count III did specify that it was in relation to charge occurring "[o]n or about July 26, 2012." Dilone pleaded guilty to Count III of the original indictment. Doc. 98. The agreement contained a broad-language waiver provision that encompassed Dilone's right to appeal or collaterally attack the judgment or the sentence imposed, so long as the sentence would be within the applicable Sentencing Guidelines Range, which the parties agreed would start from a base offense level of 26, subject to further adjustments and findings. Doc. 95 (hereinafter "Plea Agreement"), ¶¶ 11, 27.

It was noted both in the agreement itself and at the plea colloquy that the Defendant "was involved with the distribution of between 500 grams and two kilograms of cocaine," and that the distribution was "part of the same course of conduct and common scheme and plan" as the offense contained in Count 3 of the indictment. Plea Agreement, ¶ 11; Doc. 144 Ex. 2 (hereinafter "Plea Hearing Tr."), at 13. After the plea colloquy, the Probation Office compiled a Presentence Investigation Report, which was submitted to both the Court and the parties. The Report concluded, without objections from the parties, that that the

guideline calculations yielded a range of 63 to 78 months. Doc. 144 Ex. 3 (hereinafter "Sentencing Hearing Tr."), at 2.

On August 22, 2013, the Court held a sentencing hearing. Dilone's counsel at the hearing represented that he met with Dilone prior to the hearing "and went over that [presentence] report," and that while "originally there was an objection filed. We resolved that objection. As it stands today, there are no objections to the report." *Id.* at 2. *See also* Doc. 112 (objecting solely to an improper inclusion of one of Dilone's previous convictions in New York).

A few days later, Dilone filed a motion to amend the sentence, claiming that he pleaded guilty to possession with intent to distribute cocaine "in the amount of 67.3 grams," and that "the plea agreement has been changed to a charge of possession with intent to distribute cocaine in the amount of 500 grams." Doc. 117. Five days later, he submitted a supplemental letter stating that he only agreed to "plead to the 3rd Count of the indictment which charges me with possession with intent to distribute 65 grams[1], not 500 grams...The original agreement should as agreed hold below 3 years jail time, not 63 months I was given." Doc. 118 at 1. He also filed a notice of appeal on September 4, 2013. The Third Circuit granted the government's motion to dismiss the appeal based on a waiver of the right to appeal contained in the plea agreement. Third Circuit Order, at 1, *U.S. v. Dilone*, No. 13-3738 (3d Cir. Dec. 13, 2013).

---

[1] It is unclear why Defendant changed the amount from 67.3 grams in his motion to amend to 65 grams in later filings, but the discrepancy is not relevant to the resolution of this motion.

3

During the pendency of the Third Circuit appeal, Dilone filed the instant motion under 28 U.S.C. § 2255. Doc. 132. He again argues that he had only "accepted the agreement to plea to a total of 65 grams which is count III of the indictment," but the government improperly "raise[d] the drug amount [to 500 grams], which would then ultimately change the statutory sentence." *Id.* at 3. Dilone contends that this amounts to "prosecutorial vindictiveness" and a breach of the plea agreement. *Id.* He therefore asks this Court dismiss the case or in the alternative, resentence him "to the agreed upon plea agreement which is to be sentenced to a term of 36 months." *Id.* at 4.

While the instant motion was pending, counsel for Dilone moved to reduce his sentence on February 2, 2015, citing the fact that the applicable guideline sentencing range had been lowered since the imposition of his sentence and made retroactive by the United States Sentencing Commission. Doc. 138. Upon consideration of the motion, the amendments to the United States Sentencing Guidelines Manual, and the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court granted the motion and reduced Dilone's sentence from 63 months to 51 months. Doc. 140.

On May 4, 2015, the government filed an opposition to the instant motion. Doc. 144. The government argues that Dilone waived his right for collateral review pursuant to the waiver provision of the parties' plea agreement. The government pointed out that the plea agreement, the transcript of the plea hearing, and the Presentence Report all reflected that Dilone was involved with the distribution of 500 grams to 2 kilograms of cocaine. Doc. 144,

4

at 6, 12, 13. Furthermore, the government argued that Dilone has not established "that a miscarriage of justice would occur if the waiver was enforced," and that on the other hand, "if the waiver is not enforced, the United States will be denied the benefit of its bargain." *Id.* at 11.

### III. STANDARDS OF REVIEW

A convicted person who is currently imprisoned may petition the sentencing court to correct, vacate, or set aside the sentence under 28 U.S.C. § 2255. The court may only grant relief if it finds "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426–27, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962).

Dilone brings this motion to collateral attack his sentence, though his plea agreement contains a broad waiver of such challenges. "A waiver is enforceable if it was knowing and voluntary, and enforcing the waiver would not work a miscarriage of justice." *United States v. Laine*, 404 F. App'x 571, 573 (3d Cir. 2010). The defendant "bears the burden of presenting an argument that would render his waiver unknowing or involuntary." *United*

States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008). But "a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Id.* at 238.[2]

## IV. ANALYSIS

### Dilone's Waiver Was Knowing and Voluntary

Dilone argues that he "pled to count III of the indictment to which the government did promise to drop count 1 & 2, with the understanding that he would be sentenced to the amount of 3 years based on the amount of drugs that was pled to in the count (petitioner pled to 65 grams)." Doc. 132 at 4. Instead, Dilone asserts, the government "breached his plea agreement by then attributing 500 grams to [him] which allowed the Judge to become misled and sentenced [him] to a term of 63 months." *Id.* Essentially, Dilone claims that by pleading to Count III of the indictment instead of all original charges, his should have received a lesser sentence than what he was given. He asserts that this constitutes "prosecutorial vindictiveness" and a breach of the plea agreement on the part of the government. *Id.* at 3–4. Because both of these claims were made pursuant to a § 2255 motion, the Court need not reach the merits of these claims if Dilone validly waived his right to such motions. *United States v. Podlucky*, 690 F. App'x 71 (3d Cir. 2017) (noting that "the

---

[2] Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court declines to hold a hearing. 28 U.S.C. § 2255(b). A district court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008). However, "[v]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *Id.* (affirming district court's decision to deny the § 2255 petition without a hearing) (internal quotation marks omitted).

District Court was without authority to entertain the merits of [defendant's] motion to alter his sentence" when there is a collateral attack waiver)

Under paragraph 27 of the plea agreement, Dilone agreed that he:

> knowingly waives the right to appeal the conviction and sentence and the right to attack his conviction or sentence collaterally. This waiver includes any and all possible grounds for appeal...This waiver also includes a waiver of collateral review, including, but not limited to, a motion to vacate judgment under Title 28, United States Code, Section 2255; a petition for a writ of habeas corpus under Title 28, United States Code, Section 2241; a motion to amend or for relief from judgment under Rules 59 or 60 of the Federal Rules of Civil Procedure...This waiver of the right to collateral review includes any and all possible grounds for collateral relief, whether constitutional or non-constitutional...

Plea Agreement, ¶ 27. This broad-language provision was conditioned only on the fact that the Court will impose "a sentence within the Sentencing Guidelines Range or below." *Id.* Under a separate provision, the plea agreement expounded on the issue of Sentencing Guidelines:

> <u>Specific Sentencing Guidelines Recommendations.</u> With respect to the application of the United States Sentencing Commission Sentencing Guidelines to the defendant's conduct, the parties agree to recommend as follows: (a) The defendant was involved with the distribution of between *500 grams and 2 kilograms of cocaine*, and the distribution of that quantity of cocaine was *part of the same course of conduct and common scheme and plan as the offense contained in Count 3 of the Indictment*. Moreover, the conspiracy the defendant was involved in distributed the above quantities of cocaine and the distribution of that amount of controlled substances was reasonably foreseeable to the defendant and taken in furtherance of the jointly undertaken criminal activity. For the purposes of the base offense level under U.S.S.G. § 2D 1.1, the parties agree that the defendant shall have a base offense level of 26. However, if the defendant is determined to be a 'career offender' within the meaning of USSG Section 4Bl. I, the base offense level shall be 32.

7

*Id.* ¶ 11 (emphasis added). In order to determine the knowing and voluntary nature of the waiver, courts typically look to the plea colloquy to ascertain whether the defendant understood the terms of his plea agreement. *Mabry*, 536 F.3d at 238–39 (finding that the waiver was knowing and voluntary, where "[b]efore the court accepted the plea agreement, it assured itself that [defendant] had not been coerced or misled in any way into entering into the agreement. The court explained the waiver at some length, [defendant] responded directly to the court's questions, the prosecution reviewed the waiver with the defendant in open court, and defense counsel was permitted to explain further.")

Dilone's claim that he should be sentenced for possession with intent to distribute 65 grams of cocaine, instead of 500 grams of cocaine, is unsupported by the record. At the plea colloquy, the Court asked the government to reiterate the key terms of the plea agreement on the record. The government noted that "the Defendant was involved with the distribution of between 500 grams and two kilograms of cocaine, and that that was part of the same course of conduct and common scheme and plan that the Defendant is admitting that he was involved in in Count 3 of the indictment." Plea Hearing Tr., at 13. The government also stated that "plea agreement sets forth the maximum possible sentence of 20 years imprisonment." *Id.* at 12. Finally, the government noted that Dilone agreed to "waive his right to appeal and to collaterally attack the conviction and the sentence," and that Paragraph 27 "reflects that the Defendant is waiving his right to appeal the conviction and sentence and will live with whatever sentence that [the Court] determine[s] is

appropriate. He would not have any recourse against that sentence and conviction, as a result of that provision and as a result of that voluntary waiver of his appeal rights." *Id.* at 14–15.

During the colloquy, the Court asked if Dilone was able to "understand these proceedings" and "will respond intelligently to [the] questions," to which Dilone responded "yes." *Id.* at 4–5. Dilone then affirmed that he had reviewed the agreement with his attorney and that he understood the charges against him. *Id.* at 6. After the government summarized the key terms of the plea agreement, Dilone acknowledged that the government's representations were consistent with how he understood the agreement. *Id.* at 15. The Court then impressed upon Dilone that he would be bound by the plea agreement's terms even if the sentence was more severe than he had expected:

> [Court]: Do you also understand that if the sentence is more severe than you expected, you are still going to be bound by your plea and you will not have the right to withdraw the plea on that ground?
> 
> [Dilone]: Yes.
> 
> ...
> 
> [Court]: Do you understand that I will not be able to determine the guideline sentence for your case until after the Pre-sentence Report has been completed and after you and the Government have had an opportunity to challenge the facts that are reported by the Probation Officer in that report?
> 
> [Dilone]: Yes.
> 
> [Court]: Do you understand, also, Mr. Dilone, that after it has been determined what the guidelines are that apply to your case, that I do have the authority to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?
> 
> [Dilone]: Yes.

9

...

> [Court]: Do you further understand that any sentence that may be imposed may well be different than any estimate that you may have been given or any estimate you may have discussed with your attorney?
>
> [Dilone]: Yes.

*Id.* at 15–17. The Court then explained that the "plea agreement operates to effectively waive [Dilone's] right to appeal or collaterally challenge the plea of guilty in this case" but the he will have a right to challenge the sentence "under very limited circumstances," which the Court would "explain [] in greater detail at the sentencing [hearing]." *Id.* at 19.

The Sentencing Guidelines range was then calculated by the Probation Office, which provided a copy of the Presentence Investigation Report to the parties. The report concluded that the Sentencing Guidelines yielded a range of 63 to 78 months imprisonment. Sentencing Hearing Tr., at 2. At the sentencing hearing, counsel for Dilone represented that defendant had no objections to the Presentence Investigation Report. *Id.* The Court then imposed a sentence of 63 months of imprisonment, a term that is at the bottom of the applicable Sentencing Guidelines Range. *Id.* at 10. The sentence is also lower than the "maximum penalty...[of] twenty years' imprisonment" referenced in the plea agreement. Plea Agreement, ¶ 1. The Court informed Dilone that he may appeal his conviction if he believed that his guilty plea "was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings that was not waived by [his] guilty plea," but that he has "entered into a plea agreement which waives some or all of [his] rights to appeal the

10

sentence itself." Sentencing Hearing Tr., at 12. The Court further told Dilone: "Such waivers are generally enforceable. But if you believe the waiver is unenforceable, you can present that theory to the appellate court." *Id.* As noted above, Dilone *did* file a notice of appeal to the Third Circuit on September 4, 2013, which the Third Circuit dismissed based on the waiver provision in the plea agreement. Third Circuit Order, at 1, *U.S. v. Dilone*, No. 13-3738 (3d Cir. Dec. 13, 2013).

Viewing the record as a whole, including the plea agreement itself and transcripts of the plea colloquy and sentencing hearing, Dilone has had multiple opportunities to affirm his understanding that the charges against him amounted to possession with intent to distribute 500 grams to 2 kilograms of cocaine. Additionally, the plea agreement stated on the first page that "[t]he defendant agrees to plead guilty to Count 3 of the Indictment...The maximum penalty for the offense is twenty years' imprisonment..." Plea Agreement, ¶ 1. The agreement further provided that so long as the Court imposed a sentence "within the Sentencing Guidelines Range or below, the defendant knowingly waives the right to appeal the conviction and sentence and the right to attack his conviction or sentence collaterally." *Id.* ¶ 27. Dilone had given assurances to the Court that he understood the terms of the agreement, and that he had discussed the terms with his attorney. Plea Hearing Tr., at 5–6.

Finally, nothing in the record suggests that Dilone agreed to the waiver provision under coercive or false pretenses. The Court asked Dilone if he was under the influence of drugs or alcohol during the plea hearing, or if anyone made "any promises" to him that are

11

not part of the plea agreement. *Id.* at 4, 11. He responded "no" to these questions. *Id.* The government had also explicitly described the charges as involving "the distribution of between 500 grams and two kilograms of cocaine" and stated that it "was part of the same course of conduct and common scheme and plan that the Defendant is admitting that he was involved in in Count 3 of the indictment." *Id.* at 13. Dilone voiced no objection to this characterization at any time during or after the plea hearing. At the sentencing hearing, the Court noted that the Presentence Investigative Report recommended a range of 63 to 78 months, and Dilone voiced no objection, though he had an opportunity to speak. Sentencing Hearing Tr., at 2, 6.

Based on the above, it is clear that Dilone knowingly accepted the consequences of his plea. *See United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (affirming district court's denial of the § 2255 motion, when defendant's "plea agreement clearly includes a broad appellate waiver that applies to both direct appeal and collateral-attack rights. Counsel explained the waiver to [defendant] and he signed the agreement, acknowledging that he understood its terms. Further, the District Court asked [defendant] at the plea colloquy whether he had been coerced into entering the plea agreement and discussed its terms with him.") *cert. denied*, 136 S. Ct. 2486, 195 L. Ed. 2d 822 (2016). Thus, the Court concludes that Dilone entered into the plea agreement knowingly and voluntarily.

**Enforcement of the Waiver Provision Would Not Be a Miscarriage of Justice**

Having found that Dilone knowingly and voluntarily entered into the plea agreement, the Court "will not exercise its jurisdiction to review the merits of his appeal or collateral attack unless the result would work a miscarriage of justice." *United States v. Clive*, 2008 WL 3889726, at *9 (W.D. Pa. Aug. 19, 2008). The Third Circuit has said that the "miscarriage of justice" exception should be applied "sparingly and without undue generosity." *United States v. Delbridge*, 504 F. App'x 145, 150 (3d Cir. 2012). The court should use "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced." *Mabry*, 536 F.3d at 242. Some of the factors that may be considered include "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Id.* at 242–43.

On a review of the underlying facts of the plea process, the Court finds that Dilone has not identified a substantive ground for a finding of miscarriage of justice if the plea agreement is enforced. Dilone claims that the government erroneously put 500 grams in his agreement despite him having only agreed to "plea to a total of 65 grams," therefore allowing "the Judge to become misled." Doc. 132, at 3–4. But there is neither evidence that he only agreed to plead to 65 grams of cocaine nor evidence that the Court was indeed misled by the plea process. Count III of the original indictment makes no mention of any drug quantity, whether it was 65 grams or otherwise. But the plea agreement states clearly

13

that the "defendant was involved with the distribution of between 500 grams and 2 kilograms of cocaine," which "was part of the same course of conduct and common scheme and plan as the offense contained in Count III." Plea Agreement, ¶ 11. It also stated in the same paragraph that "the parties agree that the defendant shall have a base offense level of 26." *Id.* Because the agreement provided that the government would recommend "a two-level reduction in the defendant's offense level" in exchange for acceptable of responsibility, *id.* ¶ 9, Dilone ultimately received an offense level of 24 with a criminal history category of III, which at the time, corresponded to 63 to 78 months in prison. Doc. 142.

Since Dilone had the chance to read and understand both the agreement and the presentence report with his attorney (*see* Plea Hearing Tr., at 6, Sentencing Hearing Tr., at 2), he should "not be permitted to back away from [his] express agreement now." *United States v. Prechtel*, 2015 WL 9181105, at *3 (W.D. Pa. Dec. 17, 2015) (rejecting Defendant's argument that "certain sentencing enhancements were improperly applied," since she "stipulated to the amount of loss in her plea agreement, and [s]he has offered no explanation, let alone factual support, for her assertion that the amount of loss was somehow less than what she agreed to").

As discussed above, the government during both hearings had impressed upon the Court—and more importantly, Dilone—that he agreed to waive collateral attacks so long as the Court imposed "a sentence within the Sentencing Guidelines Range or below." Plea Agreement, ¶ 27. At the sentence hearing, the Court repeated the recommended sentence

14

range of 63 to 78 months to Dilone, to which he voiced no objection. Sentencing Hearing Tr., at 2. The Court had stressed to Dilone, before he pleaded guilty, that even if it rejected the parties' recommendations "pertaining to a reduction in your offense level under the guidelines, that you will still be bound by your plea," and that even if "the sentence is more severe than you expected, you are still going to be bound by your plea." Plea Hearing Tr. at 15–16. Dilone acquiesced to these statements. *Id.* Ultimately, the Court did not impose a sentence above the sentence range calculated by the Probation Office, which is the only condition under which Dilone could have brought a collateral attack. Plea Agreement ¶ 27.

Where, as here, Dilone has had multiple opportunities to review and understand that his sentence would be based on a drug quantity of over 500 grams of cocaine, and where, as here, he has voiced no objections at any time to the drug quantity or to the waiver provision, enforcing the plea agreement would not result in a miscarriage of justice. *See e.g. Delbridge*, 504 F. App'x at 151–52 ("Because the District Court explained at the plea colloquy both [the] maximum potential sentence and the Court's discretion in sentencing, and [the defendant] confirmed under oath that there were no other agreements or promises regarding his potential sentence, enforcing [the] plea waiver with respect to this claim could not result in a miscarriage of justice."); *Clive*, 2008 WL 3889726, at *8 ("[t]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong

presumption of verity") (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (U.S. 1977). Dilone's plea agreement, which precludes a collateral attack on his sentence, will be enforced.

**Certificate of Appealability**

Finally, a Certificate of Appealability may be issued where petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner is entitled to a Certificate of Appealability only when "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court finds that no reasonable jurist would argue that Dilone's waiver is not enforceable for reasons stated above. Nor is it reasonably debatable that Dilone has made a substantive claim of the denial of a constitutional right. Accordingly, no Certificate of Appealability shall issue in this case.

## V. CONCLUSION

For the reasons outlined above, Defendant's motion to vacate the sentence under 28 U.S.C. § 2255 (Doc. 132) will be denied.[3] A separate Order will follow.

---

[3] As mentioned above, Dilone also brought a motion to amend his sentence pursuant to Federal Rule of Civil Procedure Rule 60, which contained substantively the same argument as his § 2255. Doc. 117. For reasons stated in this opinion, Dilone's Rule 60 motion also fails. The waiver provision in the plea agreement not only included waiver of motions to vacate under 28 U.S.C. § 2255, but also "motion[s] to amend or for relief from judgment under Rules 59 or 60 of the Federal Rules of Civil Procedure."

16

Robert D. Mariani
United States District Judge